USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 2 7 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

In re DOMINO'S PIZZA INC.

16 Civ. 6274 (AJN)

MEMORANDUM
OPINION & ORDER

----------------------------------------X

THIS DOCUMENT RELATES TO:
*Marcelo De Los Santos, et al. v. Hat Trick Pizza, Inc.., et al.*, 16 Civ. 6274 (AJN)

----------------------------------------X

ALISON J. NATHAN, District Judge:

Plaintiffs, current and former deliverymen for Domino's Pizza, allege violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Plaintiffs assert claims against "franchisor defendants"—Domino's Pizza, Inc., Domino's Pizza LLC, and Domino's Pizza Franchising LLC—and against "corporate defendants," businesses and an individual who operate individual Domino's Pizza stores. The corporate defendants, herein referred to as "Defendants," move to dismiss Plaintiffs' First Amended Complaint. For the reasons provided below, the motion to dismiss is granted in part and denied in part.

I.  **BACKGROUND**

Plaintiffs Marcelo De Los Santos, Sandro Mayoral-Clinico, Aaron Cruz Aguacatitla, and Mouni Yamba were or are employed by Hat Trick Pizza, Inc. as deliverymen from as early as December 2008 to as late as the present day. Dkt. No. 106 (FAC) ¶¶ 7-10. Hat Trick Pizza, Inc. does business as Domino's Pizza, FAC ¶ 14, and is owned and operated by the individual Robert Cookston, FAC ¶ 38.

Domino's Pizza requires all Domino's Pizza deliverymen to wear a specific uniform. FAC ¶ 63. However, Domino's Pizza provides each deliveryman with only one or two uniforms,

1

so deliverymen must launder their uniforms in their own time without pay. FAC ¶¶ 66-67.

Similarly, Domino's Pizza deliverymen are required to use and maintain a bicycle to make their deliveries, but they do not receive any reimbursement or compensation for the purchase, repair, maintenance, or utilization of the bicycle. *See* FAC ¶¶ 113, 297-99.

Furthermore, each Domino's Pizza restaurant may impose a flat, mandatory delivery fee. FAC ¶¶ 68-70. The legal section of each Domino's Pizza store website states that no portion of the delivery fee is shared with deliverymen. FAC ¶ 72. However, customers are not given notice when they place an order that the delivery fee is not shared with the deliverymen, FAC ¶¶ 73-74, so customers "are often misled into believing that the 'delivery fee' are [sic] intended for the 'deliverymen,'" FAC ¶ 71. "As a result, many Domino's Pizza customers do not tip Domino's Pizza deliverymen and others tip Domino's Pizza deliverymen less, as they believe Domino's Pizza deliverymen are already tipped with the delivery fee." FAC ¶ 75.

On August 8, 2016, Plaintiffs filed a complaint alleging violations of the FLSA and the NYLL. Dkt. No. 1. Plaintiffs' original complaint asserted collective and class action allegations, on May 3, 2017, but Plaintiffs later submitted a letter to the Court stating their intent to proceed individually in the action and seeking leave to file an amended complaint without the collective or class action allegations. Dkt. No. 96. Defendants did not oppose that request. Dkt. No. 99. On May 18, 2017, the Court granted the request to file an amended complaint "without the collective and class allegations." Dkt. No. 101.

On May 29, 2017, Plaintiffs filed their First Amended Complaint against Hat Trick Pizza, Inc., Robert Cookston, the Domino's Pizza franchise, and 23 businesses doing business as Domino's Pizza. Dkt. No. 106. Plaintiffs worked at Hat Trick Pizza, Inc., not any of the other 23 Domino's Pizza stores, but they allege that those businesses, like Hat Trick Pizza, Inc., are

owned and operated by Cookston, FAC ¶ 38, and that "Domino's Pizza, owned and operated by Robert Cookston was, and continues to be, a single and joint employer and has had a high degree of interrelated and unified operation, and share common management, centralized control of labor relations, common ownership, common control, common website, common business purposes and interrelated business goals," FAC ¶ 40. They claim that Cookston had the power to reassign Domino's Pizza employees among the Domino's Pizza stores, FAC ¶ 41; that Cookston "was actively involved in the sales of each store, which includes the percentage of overtime assigned to deliverymen, and the delivery fee charged to Domino's Pizza client[s]," FAC ¶ 42; and that he "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment of employees, and (4) maintained employee records," FAC ¶ 46.

Plaintiffs bring 14 claims in their complaint. Relevant here, Plaintiffs assert claims of illegal retention of tips in violation of federal and state law, unlawful deductions in violation of New York law, violations of the NYLL's record-keeping and paystub requirements, failure to pay uniform maintenance pay as required by New York law, breach of implied contract for reimbursement of the costs and expenses associated with the delivery bicycles, fraudulent filing of tax returns, and deceptive practices under New York law.

On June 12, 2017, Defendants filed a motion to dismiss several of the defendants and several of the claims from the complaint. Dkt. No. 113. The Court considers that motion here and grants it in part and denies it in part.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, the plaintiff must provide "a short and plain statement of the claim showing that the

pleader is entitled to relief," that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "state a claim to relief that is plausible on its face." *Id.* at 570. The Court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## III. CLAIMS AGAINST REMAINING COOKSTON DEFENDANTS

Defendants argue that the claims against the defendants other than Hat Trick Pizza, Inc. and Robert Cookston ("the Remaining Cookston Defendants") should be dismissed because Plaintiffs have not alleged any specific facts regarding those defendants or that Plaintiffs were employed by those defendants.[1] Dkt. No. 114 (Def. Memo) at 7-9. Plaintiffs recognize that they were technically employed only by Hat Trick Pizza, Inc., FAC ¶¶ 7-10, but they contend that all Defendants "operate as a single integrated enterprise," Dkt. No. 121 (Pl. Memo) at 3.

The single employer test analyzes "whether two or more employers can be treated as one for purposes of assigning liability." *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 378 (2d Cir. 2006). "Under the single employer doctrine, four factors determine whether two entities will be regarded as a single employer subject to joint liability for employment-related acts. They are: (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and

---

[1] Specifically, those Defendants are Cookston Enterprises, Inc.; Mumbuh Style Pizza, Inc.; Sestwon Pizza, LLC; 117 Mineola Ave., LLC; 1872A Bellmore Ave., LLC; 1017 Jericho Tpke, LLC; 3489 Riverhead Pizza, LLC; 3469 Mastic Pizza, LLC; 3683 Washington Heights Pizza, LLC; 3456 Hamilton Heights Pizza, LLC; 3342 New Windsor Pizza, LLC; 3361 Monroe Pizza, LLC; 3352 Mount Kisco Pizza, LLC; 3441 Ossining Pizza, LLC; 3488 Cortlandt Manor Pizza, LLC; 3616 West Village Pizza, LLC; 3694 Lower East Side Pizza, LLC; 3551 Yonkers Pizza, LLC; Team Stamford, LLC; AAR, LLC; Lucky 13, Inc.; AC Pizza, Inc.; and Rolling In The Dough, LLC. *See* FAC; Def. Memo at 7.

4

(4) common ownership." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996). The Second Circuit has not addressed whether the single employer doctrine applies in the FLSA context, but courts in this District often apply the doctrine in that context.[2] *See Flores v. 201 W. 103 Corp.*, 256 F. Supp. 3d 433, 440 (S.D.N.Y. 2017) (collecting cases). In a case seemingly similar to this one, a court in this District held that the plaintiffs had plausibly alleged a single integrated enterprise when they asserted that the restaurant defendants "had similar names, a common theme, and similar menus," two of the restaurants shared a website, plaintiffs "personally transferred items between the [r]estaurants," and the same individual owned and operated the restaurants. *Flores*, 256 F. Supp. 3d at 442. Similarly, when a plaintiff alleged that an individual defendant owned, managed, and oversaw operations at all of the defendant restaurants, the restaurants had the same decor and menus, workers at all restaurants wore the same uniform, and the plaintiff had worked at least a few hours at each restaurant, a court in this District concluded that the allegations were sufficient to plead that the defendants operated as a single integrated enterprise. *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367-68 (S.D.N.Y. 2014).

Although, as in *Flores* and *Juarez*, the restaurant defendants here share similar décor and websites, the same name, and a common owner, *see* FAC ¶¶ 14-38, 40-41, 46, 60-64, Plaintiffs here do not contend that they had *any* connection with the Remaining Cookston Defendants. In *Flores* and *Juarez*, the plaintiffs had either worked at the defendant restaurants or at least

---

[2] At least one court has explained that the "economic reality" theory of joint employment, rather than the single employer doctrine, should govern FLSA cases. *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 & n.16 (S.D.N.Y. 2013). The economic reality of an employment relationship is analyzed on a case-by-case basis in light of the totality of the circumstances, including factors like whether the employer had the power to hire and fire the employee, whether the employer supervised and controlled work schedules or conditions of employment, whether the employer determined the rate of pay and method of payment, and whether the employer maintained employment records. *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-43 (2d Cir. 2008).

transferred items between them, *see Juarez*, 29 F. Supp. at 366, 367-68; *Flores*, 256 F. Supp. 3d at 442, but here Plaintiffs do not allege that they worked at the Remaining Cookston Defendants, that they transferred items between those stores, or that they communicated with anyone at those stores. Moreover, in *Flores* and *Juarez*, the plaintiffs had brought their claims as class and collective actions. *See Juarez*, 29 F. Supp. at 366, 368-69; *Flores*, 256 F. Supp. 3d at 437. By contrast, Plaintiffs here are pursuing only individual claims. *See* Dkt. No. 101. The single employer doctrine cannot apply in this context. Accordingly, Plaintiffs have failed to allege claims against the Remaining Cookston Defendants under a theory of single employer liability. Defendants' motion to dismiss the claims against the Remaining Cookston Defendants is therefore granted.

## IV. FAILURE TO PROVIDE A MEAL BREAK

Defendants contend that, "[a]lthough it is not enumerated in one of the Plaintiffs' fourteen counts, Plaintiffs allege in their complaint that they were not provided a break." Def. Memo at 22 (citing FAC ¶¶ 135, 203, 204). Defendants argue that to the extent the claim is alleged, it should be dismissed because there is no private right of action for the failure to provide a meal break. Def. Memo at 22-23. Plaintiffs do not oppose Defendants' motion to dismiss this claim.

Defendants are correct that no private right of action exists for a violation of the requirement to provide a meal break. *See Hill v. City of New York*, 136 F. Supp. 3d 304, 350-51 (E.D.N.Y. 2015); *Romero v. DHL Express, Inc.*, 12-CV-1942, 2015 WL 1315191, at *7 (S.D.N.Y. Mar. 24, 2015); *Russo v. 210 Riverside Tenants, Inc.*, 10 Civ. 914, 2010 WL 2758192, at *3-4 (S.D.N.Y. July 13, 2010) (citing *Carrube v. N.Y. City Transit Auth.*, 738 N.Y.S.2d 67, 68 (App. Div. 2002)). Accordingly, to the extent that Plaintiffs allege a claim for violation of the

requirement to provide a meal break, that claim is dismissed.

## V.   COUNT 1: ILLEGAL TIP RETENTION IN VIOLATION OF THE FLSA

In Count 1, Plaintiffs allege that Defendants improperly retained Plaintiffs' tips—specifically, the delivery fee Defendants charged customers. FAC ¶ 238. Defendants move to dismiss Count 1 on the basis that the delivery fee was not a tip or gratuity. Def. Memo at 10-12. Plaintiffs have not opposed that motion.

Federal regulation § 531.52 defines a tip as "a sum presented by a customer as a gift or gratuity in recognition of some service performed for him." 29 C.F.R. § 531.52. Whether an amount constitutes a tip is important because tips are the property of the employee, not the employer.[3] *Id.* Regulation § 531.52 distinguishes a tip from "payment of a charge . . . made for the service." *Id.*; *see also* 29 C.FR. § 531.55(a) ("A compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip . . . ."); 29 C.FR. § 531.55(b) ("[S]ervice charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the Act."). Indeed, "as a matter of law, a mandatory charge cannot constitute a 'tip' for purposes of the FLSA." *Maldonado v. BTB Events & Celebrations, Inc.*, 990 F. Supp. 2d 382, 388 (S.D.N.Y. 2013); *see also Barenboim v. Starbucks Corp.*, 698 F.3d 104, 112 (2d Cir. 2012) ("Tips under the FLSA . . . do not include . . . obligatory service charges.").

Plaintiffs have not sufficiently alleged that the delivery fee qualified as a tip. The complaint describes the delivery fee as a "mandatory flat 'delivery fee' applied to each Domino's

---

[3] Nevertheless, if an employee is a tipped employee—an employee "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips"—the FLSA permits the employer to take a tip credit, i.e. to use tips to cover the difference between the required cash wage and the federal minimum wage. 29 U.S.C. § 203(m) & (t).

7

Pizza order." FAC ¶ 2; *see* FAC ¶¶ 68-70. Although Plaintiffs allege that customers, thinking the delivery fee will go to the deliveryman, may not tip the deliveryman, FAC ¶ 75, that allegation does not transform the delivery fee into a tip. Instead, Plaintiffs' allegations demonstrate that the delivery fee is a "compulsory charge for service," which does not constitute a tip. *See* 29 C.FR. § 531.55(a). Plaintiffs have thus failed to sufficiently allege a FLSA claim for unlawful tip retention based on Defendants' alleged retention of the delivery fee.

In addition to discussing the delivery fee, Count 1 also states, "The FLSA also provides that where tips are charged on a credit card and the employer must pay the credit card company a percentage on each sale, the employer must pay the employee the tip, less that percentage. Employers are prohibited from unjustly enriching themselves by charging their employees a gratuities service fee charge which exceed [sic] the costs of converting credit card gratuities into cash." FAC ¶ 239-40. Those sentences make no claims about Defendants' practices regarding tips charged on credit cards, and no allegations on that topic exist anywhere in the complaint. Accordingly, Defendants' motion to dismiss Count 1 is granted.

## VI. COUNT 2: ILLEGAL TIP RETENTION IN VIOLATION OF NEW YORK LAW

Defendants argue that Plaintiffs' second claim—that Defendants unlawfully retained tips in violation of New York Labor Law—is preempted by the FLSA. Def. Memo at 12-15. In their reply brief, Defendants raise an additional argument—that "Defendants advise customers on their website that 'no portion of the delivery fee is shared with the deliverymen'" and that Plaintiffs fail to allege "that Defendants in any way led customers to believe the delivery charge was anything other than a mandatory fee." Dkt. No. 126 (Def. Reply) at 5-6.

Federal law may preempt state law if the federal statute expressly preempts state law (express preemption); if Congress has legislated so comprehensively that federal law occupies

8

the field in a certain area (field preemption); or if state law conflicts with federal law such that it is impossible to comply with both or the state law poses an obstacle to the federal objective (conflict preemption). *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010). There is typically a presumption against preemption, especially in areas where states historically exercise police powers. *Id.*

Defendants argue that under either a field preemption or conflict preemption theory the FLSA preempts New York law governing tips, N.Y. Lab. Law § 196-d and N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.18. Defendants contend that the FLSA "forms a comprehensive tip and mandatory service charge regulatory scheme," thereby occupying that field and foreclosing state regulation in the same area. Def. Memo at 12-14. In addition, according to Defendants, to the extent that New York law classifies a "mandatory delivery fee" as a tip, the law would conflict with the FLSA. Def. Memo at 14-15.

Whether a charge can be classified as a tip is relevant in determining whether the charge is the property of the employee, as with tips, or the property of the employer. In addition, under both the FLSA and the NYLL, an employer may pay a tipped employee a cash wage that is lower than the statutory minimum wage if the cash wage and the employee's tips together are at least equal to the minimum wage. *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 465 (S.D.N.Y. 2015).

The FLSA does not indicate that Congress intended to preempt the entire field of labor law. *See DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 517-18 (E.D.N.Y. 2011); *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 464 (E.D.N.Y. 2011) (citing *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 759 (9th Cir. 2010); *Overnite Transp. Co. v. Tianti*, 296 F. 2d 220, 222 (2d Cir. 1991)). Indeed, the FLSA provides that states and

municipalities may establish a minimum wage higher than that established in the FLSA, a maximum workweek lower than that in the FLSA, and a higher standard regarding the employment of child labor than that in the FLSA. 29 U.S.C. § 218(a). Although that provision does not mention tips or gratuities, there is no indication that Congress sought to occupy the field of tip and mandatory service charge regulation. Indeed, Defendants cite no cases that have reached such a conclusion. Courts frequently analyze tip retention or tip credit claims under both federal and state law. *See, e.g., Maldonado*, 990 F. Supp. 2d at 388-95. Defendants' field preemption theory therefore fails.

As for conflict preemption, there is some tension between New York's approach to mandatory delivery fees and that of the federal government. Under New York law, "[n]o employer . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Lab. Law § 196-d; *see also* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.18(a) ("A charge purported to be a gratuity must be distributed in full as gratuities to the service employees or food service workers who provided the service."). In *Samiento v. World Yacht Inc.*, 883 N.E.2d 990 (N.Y. 2008), the New York Court of Appeals explained that a mandatory service charge might be a charge "purported to be a gratuity" "when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees." *Id.* at 996; *see also Maldonado*, 990 F. Supp. 2d at 389-92 (explaining New York's approach to determining whether a charge constitutes a gratuity). Since January 1, 2011, a New York regulation has established that there is a "rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for 'service' or 'food service' is a charge

purported to be a gratuity." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.18(b). By contrast, as discussed in the previous section, under federal law, a mandatory service charge does not constitute a tip. The Second Circuit has recognized that the standards governing tips are different under the FLSA and the NYLL: "[U]nder New York law, an employer may not retain any part of a compulsory charge that it purports to collect to compensate its employees, while under federal law, the same employer may retain portions of that charge . . . ." *Barenboim*, 698 F.3d at 112. It is thus possible that a mandatory charge could classify as a tip under the NYLL but not under the FLSA. *See Maldonado*, 990 F. Supp. 2d at 388-95.

Nevertheless, although federal law and state law provide different standards to apply in determining whether a compulsory service charge is a tip, it would not be impossible to comply with both. Indeed, cases have described both standards without expressing any concern about preemption. *See, e.g., Maldonado*, 990 F. Supp. at 388-95. Federal law does not prohibit the distribution of mandatory service charges to employees, something New York law might require, though federal law would prohibit classifying that charge as a "tip." *See* 29 C.F.R. § 531.55(a). Defendants' argument that federal law preempts New York law concerning tips and service charges thus fails.

Finally, the Court may disregard Defendants' argument that Plaintiffs have not alleged that the delivery fee was "anything other than a mandatory fee" because that argument was raised for the first time in reply papers. *See Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009). In any event, Plaintiffs have alleged that the charge was in fact a gratuity. *See* FAC ¶¶ 71-75.

Accordingly, Defendants' motion to dismiss Count 2 is denied.

## VII. COUNT 3: UNLAWFUL DEDUCTIONS IN VIOLATION OF NEW YORK LAW

Defendants also seek to dismiss Count 3, which alleges unlawful deductions and retention of gratuities in violation of NYLL §§ 193 and 196-d. Defendants rely on the arguments they make about Count 2 to support their assertion that Plaintiffs' NYLL § 196-d claim should be dismissed. *See* Def. Reply at 7. As explained above, the Court denies Defendants' motion to dismiss that claim. However, Count 3 provides no new allegations regarding Plaintiffs' NYLL § 196-d claim. *See* FAC ¶¶ 247-49. To the extent that Count 3 alleges a claim based on NYLL § 196-d, it is duplicative of Count 2 and is therefore dismissed.

As to Plaintiffs' unlawful deduction claim under NYLL § 193 claim, Defendants argue that Plaintiffs do not allege any facts to support such a claim. Def. Memo at 16-17. In response, Plaintiffs do not explain why or how they have sufficiently alleged a claim under section 193. *See* Pl. Memo at 6-7.

Section 193 of the NYLL provides that no employer "shall make any deduction from the wages of an employee," except in certain specific instances, like health benefits authorized by the employee, recovery of overpayment, or repayment of advances of salary or wages. N.Y.L.L. § 193(1). Section 193 "was intended to place the risk of loss for such things as damaged or spoiled merchandise on the employer rather than the employee." *Hudacs v. Frito-Lay, Inc.*, 683 N.E.2d 322, 325 (N.Y. 1997).

Plaintiffs do not allege that Defendants made unlawful deductions from their wages. Instead, they contend that Defendants unlawfully retained portions of gratuities owed to Plaintiffs. *See, e.g.*, FAC ¶ 248. Plaintiffs' NYLL § 193 claim is thus dismissed.

Accordingly, Defendants' motion to dismiss Count 3 is granted.

## VIII. COUNT 8: FAILURE TO COMPLY WITH NEW YORK RECORD-KEEPING REQUIREMENTS

Defendants argue that Count 8, alleging a violation of the requirement to maintain and preserve records of hours worked and wages earned by Plaintiffs, should be dismissed because there is no cause of action for such a violation. Def. Memo at 17. Plaintiffs do not oppose that motion.

New York law requires each employer to "establish, maintain and preserve" true and accurate payroll records. N.Y. Lab. Law § 195(4); N.Y. Comp. Codes R. & Regs, tit. 12, § 146-2.1. "When an employer's records are inadequate, an employee may meet his or her burden of proving the number of hours worked by producing 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Carter v. Tuttnaeur U.S.A. Co., Ltd.*, 78 F. Supp. 3d 564, 571 (E.D.N.Y. 2015) (quoting *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 552 (S.D.N.Y. 2011)). "However, nothing in the NYLL authorizes an independent cause of action based on a violation of § 195(4)." *Id.*

Because no "independent cause of action" for violations of New York's recordkeeping requirements exists, Defendants' motion to dismiss Count 8 is granted.

## IX. COUNT 10: FAILURE TO PROVIDE PAYSTUB INFORMATION IN VIOLATION OF NYLL § 195

Defendants argue that Count 10, alleging a failure to provide detailed paystubs, must be dismissed because it is pled in a conclusory fashion, without any specificity. Def. Memo at 18. Plaintiffs respond that they have pleaded facts sufficient to support their claims. Pl. Memo at 7-8. Plaintiffs then cite to several paragraphs from the complaint and explain, "[P]laintiffs have stated that Defendants never provided plaintiffs with full and accurate written notice, in English

and in their primary language, of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1)." Pl. Memo at 7-8.

However, Count 10 alleges a failure to comply with New York's pay stub requirement, codified in NYLL § 195(3), not a failure to comply with the wage notice requirement of NYLL § 195(1). *See* FAC ¶¶ 284-87. Plaintiffs only allege in a conclusory fashion a violation of NYLL § 195(3) and do not provide any details to support their claim. Defendants' motion to dismiss Count 10 is therefore granted.

## X. COUNT 11: FAILURE TO PAY UNIFORM MAINTENANCE

Defendants move to dismiss Count 11 because it was not pled in the original complaint and the Court permitted Plaintiffs to file an amended complaint only to eliminate the class action allegations. Def. Memo at 18-19. According to Plaintiffs, although they added Count 11 as a claim in the amended complaint, they did not add new factual allegations, so Defendants had sufficient notice of the claim. Pl. Memo at 8.

Although Plaintiffs are correct that the original complaint included some factual allegations regarding uniform maintenance costs, Dkt. No. 1 ¶¶ 119-20, it did not include a claim alleging the failure to pay uniform maintenance. When Plaintiffs added that claim, the time period in which to amend as a matter of course had expired. *See* Fed. R. Civ. Proc. 15(a)(1). The Court granted leave to file an amended complaint "without the collective and class allegations." Dkt. No. 101. Plaintiffs' addition of a uniform maintenance claim thus exceeded the scope of the leave to amend granted by the Court. Accordingly, Count 11 is dismissed.

## XI. COUNT 12: BREACH OF IMPLIED CONTRACT

Defendants also move to dismiss Plaintiffs' claim for breach of an implied contract. They argue that Plaintiffs are at-will employees and that, therefore, "a claim for breach of

implied contract on the basis of unpaid expenses related to the purchase and maintenance of bicycles or vehicles used for delivery fails." Def. Memo at 20. Defendants do not contend that Plaintiffs have insufficiently pled the existence of an implied contract and instead insist that, as a matter of law, Plaintiffs cannot assert a claim for breach of implied contract.

Defendants overstate the law. Under New York law, a breach of contract claim may be asserted by an employee if he can show that he and his employer have entered an implied-in-fact contract. As the Second Circuit has explained, "In New York, it has long been settled that an employment relationship is presumed to be a hiring at will, terminable at any time by either party. This presumption can be rebutted, however, by establishing an express limitation in the individual contract of employment curtailing an employer's right to terminate at will." *Baron v. Port Auth. of N.Y. and N.J.*, 271 F.3d 81, 85 (2d Cir. 2001) (internal citations and quotation marks omitted). In general, when an at-will employment relationship exists, an employer may modify the terms of the employment, "subject only to [the employee's] right to leave his employment if he f[inds] the new terms unacceptable." *Sherman v. HarperCollins Publishers, Inc.*, No. 98 Civ. 2809, 1998 WL 437158, at *3 (S.D.N.Y. July 31, 1998) (alteration in original) (quoting *Int'l Paper Co. v. Suwyn*, 951 F. Supp. 445, 448 (S.D.N.Y. 1997)). Nevertheless, although, in general "under New York law, a failure by an employer to follow its internal policies cannot form the basis of a breach of contract claim," it may form the basis of such a claim if "mutual assent to enter into an implied-in-fact contract is shown." *Daniel v. Long Island Hous. P'ship, Inc.*, No. 08-CV-01455, 2009 WL 702209, at *10 (E.D.N.Y. Mar. 13, 2009).

Here, Plaintiffs claim that an implied contract arose between the parties. *See* FAC ¶¶ 297-300. Accordingly, although complaints about the terms of Plaintiffs' employment might otherwise fail as breach of contract claims, Plaintiffs' allegations may form the basis of a breach

of contract claim. Defendants' motion to dismiss Plaintiffs' breach of implied contract claim is therefore denied.

### XII.  COUNT 13: FRAUDULENT FILING OF IRS RETURNS IN VIOLATION OF 26 U.S.C. § 7434

Defendants assert that Plaintiffs have failed to state a claim under 26 U.S.C. § 7434 because they have not alleged facts from which an inference can be drawn that Defendants intentionally or willfully issued fraudulent tax information. Def. Memo at 21.

Section 7434 provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a). In *Yahui Zhang v. Akami Inc.*, 15-CV-4946, 2017 WL 4329723 (S.D.N.Y. Sept. 26, 2017), the court analyzed the plaintiff's argument that "since he was not properly compensated" under the FLSA and the NYLL, "[i]t is highly unlikely that Defendants reported accurate information on their federal and state income tax returns." *Id.* at *5 (alteration in original). The court rejected that argument, explaining that the "only relationship" between the FLSA and NYLL claims and the plaintiff's § 7434 claim was "that Defendants are required to report wage compensation on their information returns with respect to income tax withheld and given to Plaintiff." *Id.* The court noted that those assertions were not in the plaintiff's complaint, but that even if they were, they would be "insufficient to plead a plausible claim, much less a 'willful' filing of information returns." *Id.*

Here, as in *Yahui Zhang*, Plaintiffs oppose Defendants' motion to dismiss their § 7434 claim by relying on Defendants' alleged failure to pay lawful minimum wage and overtime wages and to keep accurate records. Pl. Memo at 9-10. Plaintiffs argue that it is thus "highly unlikely that Defendants reported accurate information on their federal and state income tax

16

returns." Pl. Memo at 10. The complaint itself only alleges in a conclusory fashion that, "[d]ue to Defendants' violations of 26 U.S.C. § 7434, Plaintiffs are entitled to recover from Defendants." FAC ¶ 305. The complaint does not contain any details or factual allegations—other than the alleged FLSA and NYLL violations—to support that contention. Plaintiffs have thus failed to sufficiently plead a claim under 26 U.S.C. § 7434. Consequently, Defendants' motion to dismiss Count 13 is granted.

### XIII. COUNT 14: VIOLATION OF N.Y. GENERAL BUSINESS LAW § 349

Finally, Defendants move to dismiss Count 14, violations of New York General Business Law § 349, because Plaintiffs failed to allege that Defendants' allegedly violating conduct was consumer-oriented. Def. Memo at 22.

Section 349 provides, "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a). "To state a claim under section 349, the complaint must plead that (1) the defendant's conduct was consumer-oriented; (2) the defendant engaged in a materially deceptive and misleading act; and (3) plaintiff was injured by the defendant's act." *Altman v. Bayer Corp.*, 125 F. Supp. 2d 666, 673 (S.D.N.Y. 2000). Indeed, the Court of Appeals of New York has made clear that "section 349 is directed at wrongs against the consuming public." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995). As that court has explained, a plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large." *Id.*

Here, Plaintiffs' § 349 claim appears to be based on the same conduct alleged in Count 13, that Defendants willfully filed fraudulent information returns. *See* FAC ¶ 307. However, Plaintiffs have not alleged any facts that would support a conclusion that such conduct was

consumer-oriented. Count 14 is therefore dismissed.

## XIV. CONCLUSION

As explained above, Defendants' motion to dismiss is granted in part and denied in part. Specifically, the motion to dismiss the Remaining Cookston Defendants is granted. In addition, the motion to dismiss Counts 1, 3, 8, 10, 11, 13, and 14 and any claim regarding the failure to provide a meal break is granted. However, the motion to dismiss Counts 2 and 12 is denied. This resolves Docket Number 113. An initial pretrial conference is hereby scheduled for May 25, 2018, at 3:45pm. The documents described at Docket Number 70 are due seven days before the conference.

SO ORDERED.

Dated: March __, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge